UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALI W. WILLIAMS,<br>　　　　Plaintiff,<br>　v.<br>R. CONWAY, et al.,<br>　　　　Defendants. | Case No. 19-cv-03988-EMC<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>Docket No. 1 |

## I. INTRODUCTION

Mali W. Williams, an inmate at the Salinas Valley State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the Court for review under 28 U.S.C. § 1915A.

## II. BACKGROUND

A. <u>The Breakfast/Lunch Meal Sack Served During Ramadan</u>

Mr. Williams, a Muslim inmate, alleges the following about the food served to him during the 2017 Ramadan month (i.e., May 16 – June 15, 2017) at Salinas Valley. Inmates who observed a daylight fast during Ramadan were supposed to be given a breakfast/lunch sack containing two complete meals each day. Docket No. 1-2 at 3. (They apparently also took part in the normal dinner service at the prison; Mr. Williams does not mention or complain about the dinner service). Mr. Williams was not given a full breakfast meal in his meal sack; the meal did not include a main course – which he believes should have consisted of hard-boiled eggs, tuna, or some kind of pastries. *Id.* at 4; *see also id.* at 12 (inmate grievance stating that the morning meal "didn't have a main course such as: boil eggs, tuna or any kind of pas[tries].") The meal was not the equivalent of the food provided to the rest of the Salinas Valley prison population. *Id.* at 4. Mr. Williams

filed an inmate grievance about the meal sack after Ramadan ended. Supervising correctional cook Mustafa responded that the meals provided were pursuant to the same standardized memo used for both 2016 and 2017, an assertion that Mr. Williams finds "impossible" to believe. *Id.* Mr. Williams contends that Defendants Conway, Castillo, Mustafa and Binkele are liable because they "allowed a process to be displayed against plaintiff." *Id.* at 3. Mr. Williams also contends that the breakfast deficiencies deprived him of adequate food as well as his religious freedom rights. *Id.* at 5.

The attachments to the complaint include an excerpt from a November 2008 CDCR "Food Service Handbook" that states that inmates fasting during Ramadan will be given three meals per day; "[i]f sack meals are not [to] be eaten for several hours, only include ingredients that do not require refrigeration to remain safe." Docket No. 1-2 at 14. The handbook provides a list of "sample" Ramadan meals provided at the California State Prison – Los Angeles County, but does not mandate that those particular meals be served to all prisoners observing Ramadan. *Id.* at 14-15.

Also attached to the complaint are Mr. Williams' grievances and responses thereto about the Ramadan meal service. In response to Mr. Williams' inmate appeal complaining that he had not received proper breakfasts with a main course during Ramadan, prison officials denied Mr. Williams' request "to have boiled eggs, tuna or any kind of pastries for the breakfast and lunch sack meals." *Id.* at 18. The first-level response explained that the "current Ramadan menu is based on an approved memorandum dated April 27, 2017, Procedures for Annual Muslim Ramadan Fast." Docket No. 1-2 at 17. According to the first-level response, the April 27 memorandum listed the specific items that were to be included in the meal sack on a daily basis[1] and that list did not include tuna, hard boiled eggs, or pastries. *Id.* at 18. Also according to the first-level response, the listed items provided a total of 1,674 calories, which was more than the

---

[1] The memorandum's list of items that were to be provided in the meal sack included the following: 1 box cold cereal, 2 oz. powdered milk, 1 coffee packet, 2 pieces fresh fruit, 6 slices bread, 3 pieces American cheese, 1 packet peanut butter, 1 oz. jelly, 1 bag chips or pretzel, 2 pack graham crackers, 2 beverage packets. Docket No. 1-2 at 18. The calorie count for each of these items was included in the list.

2

1,582 calories "required by the Food Service Handbook." *Id.* at 17-18. Prison officials relied on the same information to deny Mr. Williams' inmate appeals at the second and third level. *Id.* at 19-23.

B. <u>Jumuah Prayer Services</u>

Mr. Williams alleges the following about the arrangements for Jumuah prayer services at Salinas Valley. Jumuah prayer service is a Friday prayer service that is "mandatory" for Muslims to attend every week. *Id.* at 6. From about February or March 2017 until about June or July 2018, there was not an assigned Imam/chaplain for the Muslim community on C-yard. *Id.* As a result, the Jumuah prayer service was only available to Mr. Williams every other week. *Id.* He had access to regular Jumuah prayer services during the even weeks of the month but not the odd weeks. *Id.* During the odd weeks (i.e., when the regular Jumuah prayer service was not being held), Jumuah prayer services were only available if the Muslims had a volunteer. Carole Hernandez, the community resource manager, said that supervisory correctional cook Halloush was interested in volunteering. *Id.* Mr. Halloush only came to volunteer three times in the year.

Other than those few times Mr. Halloush showed up, if Mr. Williams still wanted to attend Jumuah services during the odd weeks, Mr. Williams would have had to use the C-yard outdoor religious grounds. The outdoor religious grounds area was located on the C-yard recreational yard and was loud and filthy because it was part of the general recreational area, and was right next to the bathrooms which were not blocked from view of the prayer participants. *Id.* According to Mr. Williams, the outdoor religious grounds were not appropriate for religious services. *Id.* at 6-7. Also according to Mr. Williams, he should have been allowed to conduct the Jumuah services on the odd weeks in the C-yard chapel because there was a guard stationed nearby and Mr. Williams was documented as the C-yard minister for the Muslim community who had conducted nightly Ramadan services in that chapel. *Id.* at 7. Members of other religions were allowed to attend their religious services without disruptions similar to those Mr. Williams experienced. *Id.* at 8. Defendants T. Foss and Carole Hernandez are named as defendants for this claim because events "didn't properly get handle[d] correctly," and this "led to" the denial of Mr. Williams' ability to practice his religious beliefs. *Id.* at 8.

### III. DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

A. <u>The Meal Sacks Served During 2017 Ramadan</u>

Mr. Williams' claims regarding the breakfasts served during Ramadan have several problems that require dismissal with leave to amend. One significant problem with the complaint is that it does not adequately link any Defendant to the claims regarding the meal sacks served during Ramadan.. The allegation that Defendants Conway, Castillo, Mustafa, and Binkele "allowed a process to be displayed against" Mr. Williams, Docket No. 1-2 at 3, is unclear in meaning and does not adequately describe what each Defendant did or failed to do that caused a violation of Mr. Williams' constitutional rights.

The allegation that Defendant Mustafa responded to Mr. Williams' grievance does not adequately plead a claim against Defendant Mustafa because there is no constitutional right to a

4

prison or jail administrative appeal or grievance system in California, and therefore no due process liability for failing to process or decide an inmate appeal properly. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). A prison official who denies an inmate appeal about an *ongoing* constitutional violation might have liability for the constitutional violation itself if that official is in a position to prevent or stop a constitutional violation and fails to do so, but a prison official who denies an inmate appeal about a constitutional violation that already has occurred and is complete (e.g., an exclusion of the inmate from a religious ceremony on a past date) does not have liability for that violation because he is not in a position to avert the constitutional violation. *See generally Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) (supervisor may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help). Here, Ramadan had ended before Mr. Williams filed his inmate appeal complaining about the meal sacks provided during Ramadan so there was no constitutional violation that could have been prevented or stopped by an official responding to the inmate appeal even if that official agreed with Mr. Williams' position.

In his amended complaint, Mr. Williams must list the defendants for each claim and adequately link each defendant to the claim(s). Mr. Williams should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each involved defendant did or failed to do that caused a violation of his rights, and stating when the violation occurred. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). To sue a supervisor, the plaintiff must allege facts showing (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Mr. Williams is cautioned that there is no respondeat superior liability under Section 1983, i.e. no liability under the theory that one is responsible for the actions or omissions of an employee. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978).

The next problem with the complaint is that it does not state a claim for a denial of adequate food. Adequate food is a basic human need protected by the Eighth Amendment. *See*

5

*Foster v. Runnes*, 554 F.3d 807, 812 (9th Cir. 2009). To state an Eighth Amendment claim based on a denial of food, a plaintiff must allege an objectively serious deprivation and also must allege facts showing that the defendants acted with deliberate indifference to the inmate's health or safety, i.e., the official deliberately disregarded the risk to an inmate's health or safety of which he was aware. *See id.* at 812, 814. The sustained denial of food service presents a sufficiently serious condition to meet the objective prong of the Eighth Amendment deliberate indifference analysis. *Id.* at 812. Mr. Williams must provide further information about his contention that that he was denied adequate food. The Court is unsure what the exact nature of his denial-of-adequate-food claim is because some of his allegations and his inmate appeal suggest that the gravamen of his complaint is that he did not receive specific items that he wanted (i.e., boiled eggs, tuna, and pastries) rather than that he did not receive meal sacks that contained the items on the list in the April 27, 2017, memorandum (see footnote 1, above) for Ramadan fasters. If he received meal sacks that contained the items on the list in the April 27, 2017 memorandum or comparable items, Mr. Williams must allege facts plausibly showing why those meals were not nutritionally adequate.

The next problem is that the complaint does not state a claim for the violation of Mr. Williams' religious freedom rights based on the meal sacks provided. The First Amendment guarantees the right to the free exercise of religion. In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). Inmates' religious freedoms also are protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). For an RLUIPA

6

claim, the plaintiff-inmate must show that the government has imposed a substantial burden on his religious exercise. A "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *San Jose Christian College v. Morgan Hill,* 360 F.3d 1024, 1034 (9th Cir. 2004). Here, Mr. Williams alleges that the meal sacks violated his religious freedom rights, but does not allege how the meal sacks burdened the exercise of his religion. In his amended complaint, Mr. Williams needs to allege what it was about the meal sacks that were provided that interfered with Mr. Williams' religious freedom rights under the First Amendment and/or under RLUIPA.

Lastly, Mr. Williams alleges that he received meals that were different from those provided to other inmates at the prison. The Fourteenth Amendment's Equal Protection Clause requires that similarly situated persons be treated alike. "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted). Here, an attachment to the complaint indicates that the meals for Ramadan fasters were different due to food safety issues related to leaving food unrefrigerated for several hours. If the only difference between the meal sacks and the meals served to other inmates is that the meal sacks contained items that were different simply because they had to be safe for consumption after sitting unrefrigerated for several hours, Mr. Williams must allege facts to plausibly suggest that this difference shows a purpose to discriminate against him based on his religion rather than promoting basic food safety concerns. As with his other claims, Mr. Williams must link one or more defendants to this claim.

B.  Jumuah Prayer Services

The complaint's allegations regarding Jumuah Prayer Services fail to state a claim against any Defendant for interfering with Mr. Williams' religious freedom rights or equal protection rights. The only allegation regarding the acts or omission of a defendant is that Defendant Carole Hernandez, the community resource manager, said that Mr. Halloush was interested in volunteering to help with Jumuah prayer services. That alleged conduct does not amount to an

7

interference with Mr. Williams' constitutional and RLUIPA rights. Mr. Williams also alleges that events "didn't properly get handle[d]," but that is too vague to state a claim. In his amended complaint, Mr. Williams must link one or more Defendants to the claims by describing what each Defendant did or failed to do that caused a violation of his rights under the constitution or RLUIPA.

### IV. CONCLUSION

For the foregoing reasons, the complaint is dismissed for failure to state a claim upon which relief may be granted. Leave to amend is granted so that Mr. Williams may attempt to allege one or more claims in an amended complaint. The amended complaint must be filed no later than **February 17, 2020**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Mr. Williams is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint by the deadline will result in the dismissal of the action.

**IT IS SO ORDERED**.

Dated: January 17, 2020

_____
EDWARD M. CHEN
United States District Judge