1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MALI W. WILLIAMS,

            Plaintiff,

    v.

R. CONWAY, et al.,

            Defendants.

Case No.  19-cv-03988-EMC

**ORDER OF SERVICE**

Docket Nos. 12, 15

## I.      INTRODUCTION

Mali W. Williams, an inmate at the Salinas Valley State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983.  The Court dismissed the complaint with leave to amend for Mr. Williams to correct several pleading defects.  Mr. Williams then filed an amended complaint that is now before the Court for review under 28 U.S.C. § 1915A.  This order directs the Marshal to serve process on five defendants and grants Mr. Williams' request for a copy of a document he mistakenly filed in this action.

## II.      BACKGROUND

A.    The Breakfast/Lunch Meal Sack Served During Ramadan

During Ramadan, a meal sack containing a breakfast and a lunch apparently is supposed to be provided each day to each inmate who is observing fasting protocol during Ramadan.  Mr. Williams, a Muslim inmate, alleges the following about the food served to him during the 2017 Ramadan month (i.e., May 16 – June 15, 2017) at Salinas Valley:

The meal sack that Mr. Williams received each day during Ramadan in 2017 did not include a main course for the breakfast that was to be included in his meal sack.  Because he was

United States District Court
Northern District of California

the amir and well-known as the inmate minister for the Muslim community in C-Yard, other participants complained to him that the meal sacks he handed out did not contain a main course for breakfast.  Dealing with all that complaining by other Muslim inmates overwhelmed Mr. Williams with negativity and deprived him from experiencing an appropriate holy month.

Mr. Williams contends that supervising correctional cook Mustafa, food manager Conway, and assistant correctional food manager Castillo knowingly failed to provide him with a complete breakfast meal with a main course for 30 days.  Docket No. 12 at 4-5.  Mr. Williams contends that the omission of a main course from his breakfast each day during Ramadan deprived him of his right to equal protection because inmates who were not observing Ramadan continued to receive breakfast meals with a main course.  *Id.* at 5.  He also contends the deprivation of a main course violated his religious freedom rights by burdening his religious practice.  *Id.*  And he contends that the missing main course violated his Eighth Amendment rights.  *Id.* at 4.

Several people denied Mr. Williams' inmate appeal about the missing main course.  *Id..* at 4.  The exhibits to the original complaint show that the inmate appeals were processed after the 2017 month of Ramadan had ended.  *See, e.g.,* Docket No. 1 at 12 (June 28, 2017 inmate appeal).

B.    Jumu'ah Prayer Services

Mr. Williams contends that, from about the late March 2017 until June 2018, he was not allowed the same opportunity as members of other religions to attend religious services, alleging the following:

It is mandatory for Muslims to attend Jumu'ah services every Friday but, because there was not any assigned Imam/Muslim spiritual leader/chaplain, Mr. Williams was only allowed to attend Jumu'ah services (apparently in the chapel) on the Fridays of the even weeks of a month. On the Fridays of the odd weeks of the month, he would have had to use the Outdoor Religious Grounds if he wanted to attend Jumu'ah services, even though other religious grounds were allowed to use the chapel for services every week.  The Outdoor Religious Grounds area was "never used before or even heard of."  Docket No. 12 at 6.

Community resource manager Carole Hernandez told Mr. Williams all that was available for his Jumu'ah services on the odd weeks of the month was the Outdoor Religious Grounds, even

though Mr. Williams explained to her that the space was inappropriate "due to bird droppings, dried up pepper sprayed on the ground, the loud noise during yard time with all the profanity usage, goffer holes and it being location on C-Yard right in front of the recreational restroom and at any giving time the yard can go down, so Jumu'ah service will be interrupted." Docket No. 12 at 7 (errors in source). A worker named Halloush was approved to volunteer his time on the odd weeks, but Halloush only showed up three times. Later, Mr. Williams suggested using the C-yard gym for Jumu'ah services and Ms. Hernandez said she would look into it. Mr. Williams also suggested he be approved to lead the Jumu'ah services since he was approved to lead some other services. Ms. Hernandez and warden Foss failed to timely approve a setup that would allow Mr. Williams to engage in his desired religious services, thereby violating Mr. Williams' religious freedom rights and right to equal protection.

### III.    <u>DISCUSSION</u>

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A.    <u>The Missing Breakfast Main Course</u>

The First Amendment guarantees the right to the free exercise of religion. In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). Inmates' religious freedoms also are

1  protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §

2  2000cc-1.  RLUIPA provides: "No government shall impose a substantial burden on the religious

3  exercise of a person residing in or confined to an institution, as defined in section 1997 [which

4  includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a

5  rule of general applicability, unless the government demonstrates that imposition of the burden on

6  that person (1) is in furtherance of a compelling governmental interest; and (2) is the least

7  restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).

8  For an RLUIPA claim, the plaintiff-inmate must show that the government has imposed a

9  substantial burden on his religious exercise.  A "'substantial burden' on 'religious exercise' must

10  impose a significantly great restriction or onus upon such exercise." *San Jose Christian College v.*

11  *Morgan Hill,* 360 F.3d 1024, 1034 (9th Cir. 2004).

12       Liberally construed, the amended complaint states a claim against supervising correctional

13  cook B. Mustafa, food manager R. Conway, and assistant correctional food manager J. Castillo for

14  a violation of Mr. Williams' rights under the First Amendment's Free-Exercise Clause, RLUIPA,

15  and the Equal Protection Clause due to their allegedly knowing refusal to provide him with a main

16  course in his breakfast meal each morning during Ramadan in 2017.

17       The Fourteenth Amendment's Equal Protection Clause requires that similarly situated

18  persons be treated alike.  "To state a § 1983 claim for violation of the Equal Protection Clause a

19  plaintiff must show that the defendants acted with an intent or purpose to discriminate against the

20  plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d

21  1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted).

22       Liberally construed, the amended complaint states a claim against supervising correctional

23  cook B. Mustafa, food manager R. Conway, and assistant correctional food manager J. Castillo for

24  a violation of Mr. Williams' right to equal protection based on Mr. Williams' allegation that these

25  defendants refused to provide him with a main course in his breakfast meal each morning during

26  Ramadan in 2017 even though inmates not observing Ramadan were provided with a main course

27  each morning during that time.

28       Adequate food is a basic human need protected by the Eighth Amendment.  *See Foster v.*

United States District Court
Northern District of California

4

*Runnes*, 554 F.3d 807, 812 (9th Cir. 2009). To state an Eighth Amendment claim based on a denial of food, a plaintiff must allege an objectively serious deprivation and also must allege facts showing that the defendants acted with deliberate indifference to the inmate's health or safety, i.e., the official deliberately disregarded the risk to an inmate's health or safety of which he was aware. *See id.* at 812, 814. The sustained denial of food service presents a sufficiently serious condition to meet the objective prong of the Eighth Amendment deliberate indifference analysis. *Id.* at 812.

Liberally construed, the amended complaint states a claim against supervising correctional cook B. Mustafa, food manager R. Conway, and assistant correctional food manager J. Castillo for a violation of Mr. Williams' Eighth Amendment right to adequate food based on the allegation that they gave him a meal sack missing a main course for breakfast each day during the month of Ramadan.

The amended complaint does not state a claim against those persons who denied Mr. Williams' inmate appeals about the Ramadan sack meals because, as the Court explained in the order of dismissal with leave to amend, the inmate appeal was not filed until after the Ramadan month had finished. As the Court explained, there is no due process right to have an inmate appeal processed or decided properly, and there is no liability for the allegedly unconstitutional condition if that condition has ended before the prison official decides the inmate appeal because the prison official is not in a position to avert the constitutional violation. *See* Docket No. 9 at 5. "Here, Ramadan had ended before Mr. Williams filed his inmate appeal complaining about the meal sacks provided during Ramadan so there was no constitutional violation that could have been prevented or stopped by an official responding to the inmate appeal even if that official agreed with Mr. Williams' position." *Id.*

B.   Jumu'ah Prayer Services

Liberally construed, the amended complaint states cognizable claims against community resource manager Carole Hernandez and warden Foss for violating Mr. Williams' rights under the First Amendment's Free Exercise Clause and RLUIPA by refusing to allow him an adequate space to conduct his Jumu'ah prayer service on alternate Fridays.

Liberally construed, the amended complaint states a cognizable claim against Ms.

Hernandez and warden Foss for violating Mr. Williams' right to equal protection.  These defendants allegedly refused to allow him an adequate space to conduct his Jumu'ah prayer service on alternate Fridays while other religions were allowed an adequate space to conduct their services every week.

## IV.    CONCLUSION

1.      The amended complaint, liberally construed, states cognizable claims against B. Mustafa, R. Conway, J. Castillo, Carole Hernandez, and T. Foss for violations of Mr. Williams' rights under the First Amendment's Free Exercise Clause, RLUIPA, and the Fourteenth Amendment's Equal Protection Clause.  The amended complaint, liberally construed, also states a claim against Mustafa, Conway, and Castillo for an Eighth Amendment violation.  All other claims and defendants are dismissed.

2.      The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the amended complaint, and a copy of all the documents in the case file upon the following defendants, all of whom apparently work at Salinas Valley State Prison:

- B. Mustafa (supervising correctional cook)
- R. Conway (food manager)
- J. Castillo (assistant correctional food manager)
- Carole Hernandez (community resource manager)
- T. Foss (warden)

3.      In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.      No later than **December 18, 2020,** Defendants must file and serve a motion for summary judgment or other dispositive motion.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due.  If Defendants file a motion for summary judgment, Defendants must provide to Plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion.  *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **January 22, 2021.**

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in

2   this order as he prepares his opposition to any motion for summary judgment.

3           c.      If Defendants wish to file a reply brief, the reply brief must be filed and

4   served no later than **February 12, 2021**.

5           4.      Plaintiff is provided the following notices and warnings about the procedures for

6   motions for summary judgment:

> The defendants may make a motion for summary judgment by
> which they seek to have your case dismissed.  A motion for
> summary judgment under Rule 56 of the Federal Rules of Civil
> Procedure will, if granted, end your case. . . . Rule 56 tells you what
> you must do in order to oppose a motion for summary judgment.
> Generally, summary judgment must be granted when there is no
> genuine issue of material fact -- that is, if there is no real dispute
> about any fact that would affect the result of your case, the party
> who asked for summary judgment is entitled to judgment as a matter
> of law, which will end your case.  When a party you are suing
> makes a motion for summary judgment that is properly supported by
> declarations (or other sworn testimony), you cannot simply rely on
> what your complaint says.  Instead, you must set out specific facts in
> declarations, depositions, answers to interrogatories, or
> authenticated documents, as provided in Rule 56(e), that contradict
> the facts shown in the defendants' declarations and documents and
> show that there is a genuine issue of material fact for trial.  If you do
> not submit your own evidence in opposition, summary judgment, if
> appropriate, may be entered against you.  If summary judgment is
> granted, your case will be dismissed and there will be no trial.  *Rand
> v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

18  If Defendants file a motion for summary judgment for failure to exhaust administrative remedies,

19  it is seeking to have the case dismissed.  As with other defense summary judgment motions, if a

20  motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's

21  case will be dismissed and there will be no trial.

22          5.      All communications by Plaintiff with the Court must be served on Defendants'

23  counsel by mailing a true copy of the document to Defendants' counsel.  The Court may disregard

24  any document which a party files but fails to send a copy of to his opponent.  Until a defendant's

25  counsel has been designated, Plaintiff may mail a true copy of the document directly to the

26  defendant, but once a defendant is represented by counsel, all documents must be mailed to

27  counsel rather than directly to the party.

28          6.      Discovery may be taken in accordance with the Federal Rules of Civil Procedure.

7

1   No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required

2   before the parties may conduct discovery.

3          7.      Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the

4   Court informed of any change of address and must comply with the Court's orders in a timely

5   fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant

6   to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every

7   pending case every time he is moved to a new facility.

8          8.      Plaintiff is cautioned that he must include the case name and case number for this

9   case on any document he submits to the Court for consideration in this case.

10         9.      Plaintiff's request for a copy of the request for extension of time he mistakenly

11  filed in this action is **GRANTED**.  Docket No. 15.  The Clerk will mail to Plaintiff a copy of the

12  document at Docket No. 13 and the envelope at Docket No. 13-1.

13

14         **IT IS SO ORDERED**.

15

16  Dated: September 18, 2020

17

18  _____

19                              EDWARD M. CHEN
                                United States District Judge

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California